UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTOINE TEEL,

                Petitioner,

v.                                                        CASE NO. 2:08-CV-13172
                                                          HONORABLE MARIANNE O. BATTANI

CARMEN PALMER,

                Respondent.

_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING IN PART AND GRANTING IN PART A CERTIFICATE OF APPEALABILITY

**I.      Introduction**

Michigan prisoner Antoine Teel, through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 challenging his Wayne County Circuit Court convictions for assault with intent to commit murder, MICH. COMP. LAWS § 750.83, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b, for which he was sentenced to consecutive terms of 10 to 30 years imprisonment and two years imprisonment.

In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel, the non-disclosure of evidence, prosecutorial misconduct, the trial court's admission of evidence and limitations on cross-examination, the sufficiency of the evidence, and separation of powers. Respondent has filed an answer to the petition contending that it should be denied. Having reviewed the record and considered the matter, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims and denies the petition. The Court also denies in part and

1

grants in part a certificate of appealability.

## II.    Facts and Procedural History

Petitioner's convictions arise from the shooting of Alexis Coleman, his brother's mother-in-law, outside of her residence in Detroit, Michigan on December 18, 2004.  The Michigan Court of Appeals provided a factual overview of the case, which is presumed correct on habeas review, *see Monroe v. Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 F. App'x 730 (6th Cir. 2002), as follows:

> Defendant's convictions arise from the shooting of Alexis Coleman. The victim had a daughter named Lillian who married Ricky Teel, defendant's brother, in June 2004. On December 7, 2004, there was a fire in the house in which the couple resided, and Lillian died as a result of injuries suffered in the fire. Ricky Teel also was burned in the fire and suffered injuries when he fell from the second floor bathroom window. The other occupants of the home, Lillian's children and her sister, survived the fire. The victim blamed Ricky Teel for the death of her daughter Lillian and asserted that he had a financial stake in her death because of an inheritance and a life insurance policy. She testified that she openly stated this belief at Lillian's funeral and questioned the fire department about the cause of the fire.

> On the day of the fire, the victim went to the hospital where she visited Ricky Teel in his hospital room. As she was leaving the room, she encountered defendant and mentioned how much he resembled Ricky. On December 18, 2004, the victim attended Lillian's funeral, and she saw defendant at the funeral. Later that evening, the victim was at home when Cheryl Meredith advised her that there were men in a vehicle out front asking for "Alexis." Family and friends commonly knew the victim as "Lex." After a short time period, the victim left her home and approached the vehicle. She testified that defendant was in the driver's seat, and he lifted a gun from his side and shot her in the face. The victim fell to the ground, and the vehicle drove off. When medical personnel and police arrived on the scene, the victim reportedly told police that she did not know the name of the shooter, but knew him as "her daughter's husband's brother." At that time, the victim believed that she was going to die because of the heavy blood flow from her face and had difficulty speaking because the bullet had landed in front of her vocal chords in her throat.

> There were inconsistencies in the victim's statements, and the inconsistencies were presented to the jury. At various stages, the victim identified the color of the

2

vehicle as green, purple, or turquoise. Additionally, one statement identified defendant's other brother, Curtis, as the passenger in the vehicle. Although the victim was not expressly questioned about her drug use at the time of the shooting, she was asked whether she suffered from any "impairment," and she denied the assertion. Ultimately, defendant was convicted as charged.

*People v. Teel*, Nos. 264588, 273860, 2007 WL 1828332, *1-2 (Mich. Ct. App. June 26, 2007) (unpublished).

Following his convictions and sentencing, Petitioner filed a motion for a new trial and evidentiary hearing with the trial court, which was denied. Petitioner subsequently filed a second motion for new trial asserting that trial counsel was ineffective, that the prosecution withheld evidence, that the prosecutor engaged in misconduct, and that his rights to a jury trial were violated through the use of mandatory sentencing. The trial court granted an evidentiary hearing. At that hearing, trial counsel, the prosecutor, the victim, and several witnesses testified, including Cheryl Meredith and Jerrell Beaver. The defense also presented the victim's medical records which indicated that she had a history of drug use, that she had cocaine in her system after the shooting, and that she made conflicting statements about the shooting while hospitalized. At the conclusion of the hearing, the trial court ruled that trial counsel was effective, that the prosecution did not intentionally suppress favorable evidence, that the prosecutor did not engage in misconduct, and that Petitioner's sentence was valid. The trial court nonetheless granted the motion for new trial finding that the victim's testimony had been significantly impeached and was not credible. *People v. Teel*, No. 05-001274 (Wayne Co. Cir. Ct. Sept. 26, 2006) (unpublished).

The prosecution and Petitioner both filed appeals with the Michigan Court of Appeals. The prosecution claimed that the trial court abused its discretion in granting a new trial.

3

Petitioner argued that a new trial was warranted and raised claims concerning the effectiveness of trial counsel, the non-disclosure of evidence, prosecutorial misconduct, and the trial court's admission of certain evidence and limitations on cross-examination.  The Michigan Court of Appeals reversed the trial court's grant of a new trial, denied relief on Petitioner's claims, and affirmed his convictions.  *Id.*  Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied.  *People v. Teel*, 480 Mich. 957, 741 N.W.2d 348 (2007).

Petitioner thereafter instituted this federal habeas action, raising the following claims as grounds for relief:

I.      He was denied the effective assistance of counsel where:

   A.      Counsel, without having reviewed the complainant's medical records, waived their production yet those records contained impeaching and exculpatory information.

   B.      Counsel failed to obtain a copy of the Final Arson Report and so entered into an unfavorable stipulation in regard to the arson investigation.

   C.      Counsel failed to interview the only other witness to see the perpetrators and that witness' description of the perpetrators did not match Petitioner.

   D.      Counsel failed to support the credibility of an alibi witness and the defendant by showing why they testified that they thought that Lillian's mother was dead.

   E.      Counsel failed to ask for a continuance after he was surprised by the new evidence offered by the prosecution concerning Jerrell Beaver and also failed to ask for a continuance once he was given the arson report.

   F.      Counsel failed to offer testimony that defendant at one time owned a greenish silver colored Taurus.

4

    G.    Counsel failed to attack the prosecution's theory of the case in his closing argument.

II.    The prosecution failed to give the defense evidence that it was constitutionally obligated to disclose under Brady.

III.    The following misconduct by the prosecutor denied him a fair trial under the Due Process Clause of the Fifth Amendment

    A.    The prosecutor assumed facts not in evidence which vouched for and bolstered the prosecution's case, improperly attacked the credibility of the alibi defense, and commented on defendant's right to counsel and to the effective assistance of counsel.

    B.    The prosecution's argument denigrated defense counsel to the detriment of defendant's right to be presumed innocent.

    C.    The prosecution diluted  the burden of proof in its opening and closing argument.

IV.    His constitutional rights under the Fifth and Sixth Amendments were violated by the following evidentiary rulings made by the trial judge:

    A.    The trial court permitted irrelevant and inadmissible hearsay as to how the fire got started and to problems Ricky and Lillian were allegedly having which unfairly prejudiced the jury against anyone related to Ricky Teel.

    B.    He was denied the right to confront and cross examine the witness when the trial judge sustained the prosecutor's objection to the defense's questions about the origin of the $2000.

    C.    The Court erred in denying the defense the right to cross-examine the officer in charge of the case about the results of this arson investigation where the complainant testified to the fire and to her suspicions that Ricky Teel set the fire.

V.    Established constitutional principles require that a defendant whose conviction rests on incredible and completely illogical testimony be granted a new trial.

VI.    Section 28 U.S.C. 2254(d)(I) violates the Separation of Powers Clause of the United States Constitution.

Respondent has filed an answer to the petition contending that it should be denied because the

claims have not been fully exhausted, are barred by procedural default, and/or lack merit.

## III.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified 28

U.S.C. § 2241 *et seq.*, governs this case because Petitioner filed his petition after the AEDPA's

effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings unless
> the adjudication of the claim –
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule

that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of

facts that are materially indistinguishable from a decision of [the Supreme] Court and

nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S.

12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see

also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of §

2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the

correct governing legal principle from [the Supreme] Court but unreasonably applies that

principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting

*Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal

court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous.  The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.  "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court.  *Id.*  Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the

Supreme Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412;

*see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the

Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of

clearly established Federal law' for a state court to decline to apply a specific legal rule that has

not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120,

125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d)

"does not require a state court to give reasons before its decision can be deemed to have been

'adjudicated on the merits.'"  *Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require

citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme

Court] cases, so long as neither the reasoning nor the result of the state-court decision

contradicts them."  *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.

While the requirements of "clearly established law" are to be determined solely by Supreme

Court precedent, the decisions of lower federal courts may be useful in assessing the

reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488,

493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v.

Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a state court's factual determinations are presumed correct on federal habeas

review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear

and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

## IV.     Discussion

### A.     Ineffective Assistance of Counsel Claims

Petitioner first asserts that he is entitled to habeas relief because trial counsel was

ineffective for: (1) waiving the victim's medical records without reviewing them, (2) failing to obtain a copy of the final arson report, (3) failing to interview a witness who saw the perpetrators, (4) failing to support the credibility of Petitioner and his fiancee, (5) not seeking a continuance after the disclosure of new evidence, (6) not presenting testimony that Petitioner owned a car like the one identified in the shooting, and (7) not attacking the prosecution's theory of the case during closing arguments. Respondent contends that these claims lack merit.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a

9

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The Supreme Court has recently confirmed that a federal court's consideration of ineffective assistance of counsel claims arising from state criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state appellate courts reviewing their performance. "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S. Ct. at 788 (internal and end citations omitted). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard. *Id*. at 788.

Petitioner first asserts that trial counsel was ineffective for waiving the victim's medical records without reviewing them. Well-established federal law requires that defense counsel conduct a reasonable investigation into the facts of a defendant's case, or to make a reasonable determination that such investigation is unnecessary. *See Wiggins*, 539 U.S. at 522-23; *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2007); *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "American Bar Association standards ... also mandate counsel's duty to investigate all leads relevant to the merits of the case." *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387

10

(2005) (noting that the ABA standards provide guidance for determining the reasonableness of counsel's conduct). The duty to investigate "includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns*, 395 F.3d 251 at 258. "A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them." *Id.* (quoting *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir. 1991)). Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable. *See Wiggins*, 539 U.S. at 526; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992).

Applying the *Strickland* standard, the Michigan Court of Appeals denied relief on this claim. The court explained:

> The first challenge is to defense counsel's failure to obtain and utilize the victim's medical records to impeach her testimony. However, defendant failed to overcome the presumption that the action might be considered trial strategy, *Tommolino, supra*, and that the outcome of the proceedings would have been different. *Hoag, supra*. The victim was shot in the face on the day she buried her daughter. Irrespective of any drug use, for that reason, the jury may have been sympathetic to her, and a blatant attack on her for drug use may have swayed the jury against the defense. Thus, it may have been sound trial strategy to fail to examine the victim on this issue. Defense counsel did inquire whether the victim suffered from any impairment on the evening of the shooting, and she denied the assertion. At the *Ginther* hearing, there was no expert testimony from medical personnel to discuss the amount of drugs found in her system at the hospital, the type of drugs in her system, and the impact of the type of drugs ingested. Additionally, defense counsel stated that he believed that the impartial alibi witness, the hospital worker, constituted sufficient evidence of reasonable doubt and buttressed the theory of misidentification. Consequently, we cannot conclude that the outcome of the proceedings would have been different.

*Teel*, 2007 WL 1828332 at *10.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. The record reflects that trial counsel made a strategic decision to employ an alibi defense –

11

which was supported by Petitioner's own testimony, family members' testimony, and a hospital worker's testimony – after consulting with Petitioner and reviewing discovery materials.  At the *Ginther* hearing, trial counsel testified that he was aware of Alexis Coleman's drug use before trial because people had told him that she used drugs.  He also knew that she was shot in the face.  He said that he assumed that her medical records would be produced during normal discovery, but they were not produced.  Trial counsel further explained that once he realized that Petitioner had an alibi supported by an objective witness, he decided to present an alibi defense and did not think that Alexis Coleman's medical records were relevant.  He therefore did not seek to review her medical records.  Trial counsel's decision was reasonable under the circumstances and is entitled to a significant measure of deference.  As the Supreme Court has recently stated, "[t]here comes a point where a defense attorney will reasonably decide that another strategy is in order, thus making particular investigations unnecessary. . . .Those decisions are due a heavy measure of deference."  *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1407 (2011) (reversing grant of habeas relief on ineffective assistance of counsel claim) (citations omitted).  Thus, while counsel acknowledged, in hindsight, that the medical records may have been useful to challenge Alexis Coleman's identification of Petitioner as the perpetrator of the shooting, he nonetheless had a logical reason for not reviewing those records before trial.  It was therefore reasonable for the Michigan Court of Appeals to conclude that trial counsel's performance in this regard was acceptable.

Moreover, even assuming that trial counsel erred in failing to investigate Alexis Coleman's medical records before trial, Petitioner has not shown that he was prejudiced by counsel's conduct.  He has presented no records showing the amount of cocaine (or any other

drugs) found in her system after the shooting.  He has also not offered evidence, *i.e.* expert testimony, to show that Alexis Coleman's history of drug use or the cocaine found in her system at the hospital affected her ability to perceive or recall the shooting or affected her ability to identify someone as the perpetrator – particularly someone she knew.  Conclusory allegations, without evidentiary support, are insufficient to warrant habeas relief.  *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary hearing in habeas proceedings).[1]

    Additionally, while one medical document indicates that Alexis Coleman said that "her daughter's husband" shot her (rather than her daughter's husband's brother) and another document indicates that she was shot at her daughter's house (rather than her own house), such statements clearly contradict known and undisputed facts and Alexis Coleman denied making the statements at the *Ginther* hearing.  The prosecution could have easily accounted for the discrepancies by showing that the statements were made under trauma and the influence of medications and/or that they were simply the result of misunderstandings or record-keeping errors.  Other evidence also established that Alexis Coleman told people that "her daughter's

---

[1]Petitioner requests an evidentiary hearing on this issue.  Petitioner, however, had an opportunity to present any such expert testimony at the state court evidentiary hearing but did not do so.  The state courts ruled on the merits of the issue based upon the record before them. Under such circumstances, an additional evidentiary hearing is unwarranted.  *See Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011) (clarifying that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits").

husband's brother" shot her and she subsequently identified Petitioner as that person.

Lastly, the record indicates that trial counsel challenged Alexis Coleman's identification of the perpetrator, discussed the varying descriptions of the car used in the shooting, highlighted discrepancies in her statements, and questioned her relationships. Counsel also presented a reasonable alibi defense. Despite such measures, the jury credited Coleman's identification and found Petitioner guilty of the crime. Given such circumstances, it was reasonable for the Michigan Court of Appeals to conclude that Alexis Coleman's medical records would not have affected the outcome at trial. Habeas relief is not warranted on this claim.

Petitioner next asserts that counsel was ineffective for failing to obtain a copy of the final arson report. The Michigan Court of Appeals denied relief on this claim, stating:

> Defendant next asserts that it was erroneous for trial counsel [not] to obtain the arson report. Again, this issue is one of trial strategy that would not change the outcome of the trial. *Hoag, supra; Tommolino, supra*. It is important to note that the trial court limited the amount of evidence that could be admitted regarding the fire, concluding that it would not hold a trial within a trial regarding the alleged arson. Furthermore, the fire investigator did not rule the case an arson; he testified at the *Ginther* hearing that it was because he was required to eliminate certain causes, and he could not do so. Additionally, efforts to learn about what transpired in the home were based on witness accounts, and Ricky Teel reportedly refused to come in and give a statement to the arson investigator. Thus, this portion of the arson investigation would not have been favorable to the defense. Therefore, it was effective trial strategy to avoid this area and also a moot issue in light of the trial court's instruction that it would not conduct a trial within a trial.

*Teel*, 2007 WL 1828332 at *11.

This decision is neither contrary to *Strickland* nor an unreasonable application thereof. The record indicates that trial counsel had a copy of the initial arson report at the time of trial. The supplemental report included information about the arson investigator's visit with Ricky Teel at the hospital and his review of Lillian Teel's body at the morgue. The report described

14

Ricky Teel's injury and related his account of the fire.  At the *Ginther* hearing, the investigator testified that Ricky Teel refused to further meet with him after his release from the hospital. Trial counsel testified that once the investigator determined that the cause of the fire was undetermined, he did not believe that further information about the fire itself was material. Counsel acknowledged that he had agreed to a stipulation at trial which provided that the arson investigation was ongoing.  Both the initial arson report and the supplemental report stated that the fire type was undetermined, that the undetermined status was accidental, and that the cause of the fire was undetermined.  Given such circumstances, it is clear that trial counsel reviewed the initial arson report and determined that further information about the arson investigation was unnecessary, particularly given Petitioner's alibi defense, and the trial court's reluctance to allow extensive inquiry into information concerning the fire itself.  Counsel's conduct was reasonable and in keeping with professional norms.

Moreover, Petitioner has failed to show that he was prejudiced by trial counsel's conduct.  The supplemental information did not alter the arson investigator's initial findings nor provide exculpatory information as to the shooting at issue in this case.  The trial court also limited the admission of evidence about the fire so as to avoid conducting a trial within a trial. Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's conduct in this regard.  Habeas relief is not warranted on this claim.

Petitioner next asserts that trial counsel was ineffective for failing to interview witness Cheryl Meredith and for failing to support Petitioner's and his fiancee's credibility by presenting evidence to show that Lillian Teel had told people that her mother (Alexis Coleman) was dead.  The Michigan Court of Appeals denied relief on this claim, stating:

15

> Defendant also asserts that trial counsel was ineffective for failing to present evidence from Cheryl Meredith and to present evidence that Lillian reported the victim as dead. However, Meredith could not identify the men in the car and admitted that she had consumed drugs on the day of the incident. The testimony regard[ing] Lillian's relationship with the victim constituted a collateral matter that merely would have delayed the trial. Moreover, defendant testified at trial regarding Lillian's report of her mother's death. Consequently, this claimed error is without merit.

*Teel*, 2007 WL 1828332 at *11.  This decision is neither contrary to *Strickland* nor an unreasonable application of federal law or the facts.

Decisions as to what evidence to present and whether to call certain witnesses are generally presumed to be a matter of trial strategy.  The failure to call witnesses or present other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002).  When making strategic decisions, counsel's conduct must be reasonable.  *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

Petitioner has not shown that counsel was ineffective or that he was deprived of a substantial defense.  At the *Ginther* hearing, Cheryl Meredith testified that the men in the car were husky and bald, but she could not identify them and they were not anyone she knew.  She admitted using heroin and drinking beer on the day of the shooting, but did not know if Alexis Coleman had used drugs that day.  Meredith also testified that she previously had a drug habit, but only "dibble dabbled" in drugs at the time of the hearing.  Meredith did not provide exculpatory information.  Given this record, Petitioner has not shown that counsel erred by not interviewing and/or present testimony from Cheryl Meredith at trial or that he was prejudiced by counsel's conduct.

Similarly, Petitioner cannot prevail on his claim that counsel failed to present testimony that Lillian Teel reported her mother as dead. Petitioner and his fiancee both testified that Lillian Teel had told them that her mother was dead. The jury was aware that Alexis Coleman did not attend Lillian and Ricky Teel's wedding. Additionally, counsel attempted to discredit Alexis Coleman by presenting testimony that Lillian Teel's younger daughter, Danielle, was staying with Petitioner and Lillian Teel but Alexis Coleman was keeping her support checks. Counsel also cross-examined Alexis Coleman about her knowledge of Lillian and Ricky Teel's and financial affairs. Counsel's actions were reasonable, particularly given his strategic decision to present an alibi defense. Petitioner has not shown that counsel erred and/or that he was prejudiced by counsel's conduct in not offering additional testimony regarding Alexis Coleman's relationship with Lillian Teel. Habeas relief is not warranted on this claim.

Petitioner next asserts that counsel was ineffective for failing to request a continuance after the disclosure of new evidence, failing to admit evidence of Petitioner's ownership of a Taurus, and failing to attack the prosecution's theory of the case. The Michigan Court of Appeals denied relief on these claims, stating:

> Lastly, defendant asserts that it was error to fail to request a continuance when evidence about the passenger was discovered, error to fail to attack the prosecutor's theory of the case, and error to fail to admit evidence of defendant's ownership of a Taurus. However, we cannot conclude that these allegations constitute error, but fall under the category of trial strategy for which the presumption was not overcome. *Tommolino, supra*

*Teel*, 2007 WL 1828332 at *11.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As noted, decisions as to what evidence to present and whether to call certain witnesses are presumed to be a matter of trial strategy, and the failure to

17

call witnesses or present evidence constitutes ineffective assistance of counsel only when it deprives a defendant of a substantial defense. *See Chegwidden*, 92 F. App'x at 311; *Hutchison*, 303 F.3d at 749; *see also Roe*, 528 U.S. at 481; *Wiggins*, 539 U.S. at 522-23.

In this case, trial counsel's decisions as to such evidentiary matters can reasonably be viewed as sound trial strategy. Counsel knew about Jerrell Beaver at trial and challenged the disputed testimony at trial. Counsel also spoke with Petitioner about his own car. Counsel elected not to further delve into such matters at trial. This was reasonable given the possibility that Beaver's car could have been used in the shooting and given that Petitioner's car was never alleged to have been used in the shooting. Moreover, counsel's conduct did not deprive Petitioner of a substantial defense. Counsel presented a reasonable alibi defense, which included Petitioner's own testimony, family members' testimony, and a hospital worker's testimony. He also cross-examined prosecution witnesses, particularly the shooting victim, and challenged the prosecution's version of events. The fact that trial counsel's strategy was ultimately unsuccessful does not mean that he was ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Habeas relief is not warranted on this claim.

**B.     Non-Disclosure of Evidence Claims**

Petitioner next asserts that he is entitled to habeas relief because the prosecutor failed to disclose the following information: (1) Stephanie Teamer's identification of Jerrell Beaver as the passenger in the car; (2) the car registration print-out with a handwritten notation that Beaver's Taurus was silver frost in color, and (3) the final arson report. Respondent contends

18

that these claims lack merit.

It is well-settled that there is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). The Supreme Court has held that the prosecutor's failure to disclose evidence favorable to the defense constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). In other words, to find a Brady violation, not only must the evidence be suppressed, but the suppressed evidence must be material and favorable to the accused. *Elmore v. Foltz*, 768 F.2d 773, 777 (6th Cir. 1985).

Favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985); *see also Kyles v. Whitley*, 514 U.S. 419, 432-36 (1995). Material evidence is that which is "so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce." *United States v. Clark*, 988 F.2d 1459, 1467 (6th Cir. 1993). The duty to disclose favorable evidence includes the duty to disclose impeachment evidence. *Bagley, supra; Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

The *Brady* rule only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103 (1976); *see also Mullins v. United States*, 22 F.3d 1365, 1370-71 (6th Cir. 1994). Moreover, a Brady violation does not occur if previously undisclosed evidence is disclosed during trial unless the defendant is prejudiced by its prior non-disclosure. *See United States v. Word*, 806 F.2d 658, 665 (6th Cir. 1986). Thus, in order to establish a *Brady* violation, a

petitioner must show that: (1) evidence was suppressed by the prosecution in that it was not known to the petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of the petitioner's guilt. *See Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The petitioner bears the burden of establishing a *Brady* violation. *Carter*, 218 F.3d at 601.

> The Michigan Court of Appeals denied relief on this claim, explaining in relevant part:
>
> After review of the record in this case, we cannot conclude that the trial court clearly erred in its factual findings because the factors to establish a *Brady* violation were not established. The first criteria to establish a violation could not be satisfied because the information was not exculpatory or favorable to the defense. The evidence was designed to identify the person who was in the car with defendant at the time of the shooting. It would have served as circumstantial evidence to corroborate the prosecutor's theory of the case. Secondly, it is questionable how the information was unavailable to defendant. Defendant knew a person with the initials "J.B." or "J," and he had to know that the prosecutor would try to tie that individual to defendant if she learned that defendant associated with such a person. Thirdly, the prosecutor indicated that she did not suppress the favorable evidence. Indeed, the prosecutor testified regarding the time line for learning of the information. The effort to learn of the passenger was made three days before trial was to commence. The prosecutor also described how the information came in piece meal. That is, she learned of ownership of a vehicle, but did not have a photo of the person to whom the vehicle was registered and also did not know of the vehicle's color. Under the circumstances, defendant failed to meet the four criteria for establishing a *Brady* violation.

*Teel*, 2007 WL 1828332 at *12. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.

Petitioner has not met his burden of establishing a *Brady* violation. First, information regarding Jerrell Beaver was not suppressed given that it was disclosed to the defense at trial and Petitioner has not shown that any delay in disclosure prejudiced his defense. Beaver was Petitioner's friend and Petitioner could have asked him to appear at trial. Second, the defense

20

was aware of the Detroit Fire Department's initial arson report and ongoing investigation, and it appears that Ricky Teel provided the only additional information contained in the final report. Petitioner has not shown that the information contained in the final arson report was in the sole possession of the prosecution and/or that it could not have been discovered with reasonable diligence. Petitioner has also not shown that the arson report was exculpatory as to the charged offense. Third, Petitioner has not shown that there is a reasonable probability that, had the foregoing evidence been previously disclosed to the defense, the result of the proceeding would have been different. While there are some discrepancies as to the vehicle's color and the additional occupant of the vehicle, the victim never wavered in her identification of the shooter. Lastly, there is no indication that the prosecution intentionally withheld any evidence. As noted, conclusory allegations do not provide a basis for habeas relief. *See Cross*, 238 F. App'x at 39-40; *Prince*, 78 F. App'x at 442; *Workman*, 178 F.3d at 771; *see also Washington*, 455 F.3d at 733. Accordingly, the Court cannot conclude that the prosecutor committed a *Brady* violation or otherwise violated Petitioner's constitutional rights. Habeas relief is not warranted.

### C.    Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by: (1) assuming facts not in evidence to bolster the prosecution's case, (2) improperly attacking the alibi defense, (3) commenting on the right to counsel, (4) denigrating defense counsel, and (5) diluting the burden of proof. Respondent contends that these claims are barred by procedural default and/or lack merit.

Federal habeas relief may be precluded on a claim that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433

U.S. 72, 85-87 (1977); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991).  The doctrine of

procedural default is applicable when a petitioner fails to comply with a state procedural rule,

the rule is actually relied upon by the state courts, and the procedural rule is "adequate and

independent."  *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006); *see also Howard v.*

*Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir.

2001).  "A procedural default does not bar consideration of a federal claim on either direct or

habeas review unless the last state court rendering a judgment in the case 'clearly and

expressly' states that its judgment rests on a state procedural bar."  *Harris v. Reed*, 489 U.S.

255, 263-64 (1989).  The last *explained* state court judgment should be used to make this

determination.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991).

    The Michigan Court of Appeals rendered the last reasoned opinion on these claims.  In

dismissing these claims, the court relied upon the failure to object at trial.  *See Teel*, 2007 WL

1828332 at *12-13.  The failure to make a contemporaneous objection is a recognized and

firmly-established independent and adequate state law ground for refusing to review trial errors.

*See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People v. Stanaway*, 446

Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51

(1991).  Moreover, a state court does not waive a procedural default by looking beyond the

default to determine if there are circumstances warranting review on the merits.  *See Paprocki v.*

*Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of

state procedural default rules.  *See Girts v. Yanai*, 501 F.3d 743, 755 (6th Cir. 2007); *Hinkle v.*

*Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir.

2000).  Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the

merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied these claims based upon a procedural default – the failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). To establish cause, a petitioner must establish that some external impediment frustrated his ability to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). A petitioner must present a substantial reason to excuse the default. *See Amadeo v. Zant*, 486 U.S. 214, 223 (1988). Such reasons include interference by officials, attorney error rising to the level of ineffective assistance of counsel, or a showing that the factual or legal basis for a claim was not reasonably available. *See McCleskey v. Zant*, 499 U.S. 467, 493-94 (1991).

In this case, Petitioner acknowledges the procedural default problem and alleges ineffective assistance of trial counsel as cause to excuse his default. This particular claim of ineffective assistance of counsel, however, has not been exhausted in the state courts. A claim of ineffective assistance of counsel asserted as cause to excuse a procedural default is an independent constitutional claim which requires proper exhaustion in state court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). Because Petitioner has not exhausted this claim of ineffective assistance of trial counsel in the state courts, he cannot rely upon it to establish cause to excuse his default of his prosecutorial misconduct claims. *See, e.g., Jacobs v. Mohr*, 265 F.3d 407, 417-18 (6th Cir. 2001).

23

The Court need not address the issue of prejudice when a habeas petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983); *Bell v. Smith*, 114 F. Supp. 2d 633, 638 (E.D. Mich. 2000). Nonetheless, the Court notes that Petitioner cannot establish prejudice (or entitlement to habeas relief) as the prosecutorial misconduct claims lack merit for the reasons stated by the Michigan Court of Appeals in reviewing them for plain error. *See Teel*, 2007 WL 1828332 at *12-13. The prosecutor properly questioned Sharon Miles and Carl Larkins about their alibi testimony and challenged their credibility and version of events. The prosecutor was entitled to comment on the evidence and argue reasonable inferences from that evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). Moreover, a prosecutor may argue from the facts that a witness is (or is not) worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000). The prosecutor's comments about Jerrell Beaver did not misstate the evidence.

Additionally, while it is inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel, *see, e.g., United States v. Young*, 470 U.S. 1, 9 (1985), or argue that counsel is attempting to mislead the jury, *see West v. Bell*, 550 F.3d 542, 565 (6th Cir. 2008), a prosecutor's description of a defense claim as a red herring, a smoke screen, or a distraction is not per se improper. *See United States v. Bernard*, 299 F.3d 467, 487-88 (5th Cir. 2002); *United States v. Rivera*, 971 F.2d 876, 883 (2d Cir. 1992). A prosecutor may highlight inconsistencies or inadequacies in the defense, *see Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *See United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005). The prosecutor did just that here and did not improperly denigrate the defense nor shift the burden of proof.

24

Moreover, the trial court instructed the jury about the elements of the crime and the burden of proof, and explained that the attorneys' arguments are not evidence.  Jurors are presumed to follow a trial court's instructions.  *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors . . . take an oath to follow the law as charged, and they are expected to follow it.").  Petitioner has failed to show that the prosecutor's questions and arguments were improper and/or were so flagrant as to render his trial fundamentally unfair.  *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (setting forth two-part test).

Petitioner has also not shown that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent.  *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998).  "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Schlup*, 513 U.S. at 324.  Petitioner has made no such showing.  These claims are thus barred by procedural default, lack merit, and do not warrant habeas relief.

### D.    Evidentiary Ruling Claims

Petitioner next asserts that he is entitled to habeas relief because the trial court erred by: (1) admitting hearsay evidence as to how the fire started and marital problems between Ricky

25

and Lillian Teel, (2) limiting cross-examination of a witness about the arson report, and (3) limiting cross-examination of Alexis Coleman as to the origin of the $2,000 she gave Lillian for her wedding.  Petitioner asserts a violation of due process and his right to cross-examine witnesses and present a defense.  Respondent contends that these claims lack merit.

Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  In other words, "[t]rial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment."  *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *McGuire*, 502 U.S. at 69-70); *see also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

That being said, the right of an accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. State*, 388 U.S. 14, 19 (1967).  However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  *United States v. Scheffer*, 523 U.S. 303, 308 (1998).  A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."  *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)).  State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"  *Scheffer,* 523 U.S.

26

at 308 (internal citations omitted). "A defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id*. (internal quotations omitted). The Supreme Court has explained:

> [W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury . . . . [T]he Constitution permits judges 'to exclude evidence that is 'repetitive . . . only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'

*Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

In this case, the Michigan Court of Appeals denied relief on the evidentiary claims finding that the trial court properly admitted the victim's opinion about the arson because it established a motive for the crime, ruling that the trial court's exclusion of additional information about the fire was not an abuse of discretion because the testimony about the fire was admitted for the limited purpose of connecting Petitioner and the victim, the actual cause of the fire was a collateral matter, and the arson investigator's testimony was not favorable to the defense, and concluding that the trial court's limitation on cross-examination regarding the victim's source of the $2,000 was not an abuse of discretion because it addressed a collateral matter and the defense did not make an offer of proof. *Teel*, 2007 WL 1828332 at *14.

27

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The victim's opinion about the fire (and testimony about Lillian and Ricky's relationship) was relevant to establish motive and to put the events in context. The trial court's limitation on detailed inquiry into the fire and the court's restriction on questioning about the source of the $2,000 was appropriate as such issues were collateral to the charged assault. Petitioner presented an alibi defense at trial and challenged the victim's credibility through cross-examination. He has not shown that the trial court's evidentiary rulings deprived him of the opportunity to present a substantial defense or otherwise violated his constitutional rights. Habeas relief is not warranted on these claims.

### E.    New Trial/Insufficient Evidence Claim

Petitioner also asserts that he is entitled to habeas relief because his conviction was based on incredible and illogical testimony from the victim which warranted a new trial. Respondent contends that this claim is unexhausted and/or lacks merit.

As an initial matter, the Court notes that Petitioner is not entitled to relief on this claim to the extent that he asserts that the jury's verdict was against the great weight of the evidence or challenges the Michigan Court of Appeals' decision denying re-trial. It is well-settled that a federal court has no power to grant habeas relief on the ground that a state conviction is against the great weight of the evidence. *See Cukaj v. Warren*, 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub*, 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Crenshaw v. Renico*, 261 F. Supp. 2d 826, 834 (E.D. Mich. 2003). In Michigan, a trial court may order a new trial "where the evidence preponderates heavily against the verdict and a serious miscarriage of justice would otherwise result." *People v. Lemmon*, 456 Mich. 625, 642, 576

28

N.W.2d 129, 137 (1998) (internal quotation omitted).  This authority is conferred by statute and court rule.  *Id.* at 634, 576 N.W.2d at 133 (citing MICH. COMP. LAWS § 770.1 and MICH. CT. R. 6.431(B)). The Michigan Supreme Court has noted that the grant of a new trial under these circumstances is distinct from the due process issues raised by insufficient evidence, and "does not implicate issues of a constitutional magnitude." *Id.* at 634 n. 8, 576 N.W.2d at 133.  Thus, to the extent that Petitioner challenges the Michigan Court of Appeals' construction or application of state law, he is not entitled to relief.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (holding that "federal habeas corpus relief does not lie for errors of state law"); *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (state courts are the final arbiters of state law).  It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Habeas relief is thus not warranted on such a basis.

However, the federal due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  The question on such a sufficiency of the evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In the habeas context, "[t]he *Jackson* standard must be applied 'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" *Brown v. Palmer*, 441 F.3d 347, 351 (6th Cir. 2006) (quoting *Jackson*, 443 U.S. at 324 n. 16).  "A reviewing court

does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court." *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  Accordingly, "[t]he mere existence of sufficient evidence to convict . . . defeats a petitioner's claim."  *Matthews*, 319 F.3d at 788-89.

Under Michigan law, the elements of assault with intent to commit murder are:  "(1) an assault, (2) with an actual intent to kill, (3) which if successful, would make the killing murder." *Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998) (citing *People v. Plummer*, 229 Mich. App. 293, 305, 581 N.W.2d 753, 759 (1998)); MICH. COMP. LAWS § 750.83.  The elements of felony firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony.  *See People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (citing *People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)); MICH. COMP. LAWS § 750.227b.  Additionally, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense.  *See, e.g., People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967).  In other words, "proof of [the] defendant's connection with the alleged offense is an indispensable element of [the prosecutor's] duty."  *Id.*  Direct or circumstantial evidence and reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *see People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *see Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. 2002); *Kern*, 6 Mich. App. at 409; *see also People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740, 742 (1985), and the defendant's intent or state of mind.  *See People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997); *see also People v. Nowack*, 462

Mich. 392, 402-403, 614 N.W.2d 78 (2000).

The Michigan Court of Appeals reversed the trial court's grant of a new trial and affirmed Petitioner's convictions, essentially finding that the victim's testimony and identification of Petitioner as the shooter provided sufficient evidence to support his convictions. *See Teel*, 2007 WL 1828332 at *6-10. The Michigan Court of Appeals' decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.[2] The victim's testimony, if believed, provides sufficient evidence of Petitioner's guilt at trial. Petitioner challenges the jury's credibility determination and the inferences the jury drew from the testimony at trial. However, it is the job of the fact-finder at trial, not a federal habeas court, to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict, and the Michigan Court of Appeals' decision affirming that verdict, were reasonable. The victim's testimony, if believed, provided sufficient evidence that Petitioner committed the crime. Habeas relief is not warranted on this claim.[3]

### F.    Separation of Powers Claim

---

[2]The Court notes that it would reach the same result under a *de novo* standard of review given that the Michigan Court of Appeals did not address the federal sufficiency of the evidence issue.

[3]Given the Court's denial of relief on the merits, the Court need not and shall not address the exhaustion issue as to this claim.

Lastly, Petitioner asserts that 28 U.S.C. § 2254(d)(1) violates the Separation of Powers Clause of the United States Constitution.  Respondent contends that this claim is unexhausted and/or does not warrant habeas relief.

This Court has previously rejected such a constitutional challenge to the habeas statute, *see Byrd v. Trombley*, 580 F. Supp. 2d 542, 551-52 (E.D. Mich. 2008) (adopting magistrate judge's report), as have other federal courts, *see Evans v. Thompson*, 518 F.3d 1, 4-10 (1st Cir. 2008); *Duhaime v. Ducharme*, 200 F.3d 597, 601 (9th Cir. 2000); *Green v. French*, 143 F.3d 865, 874-75 (4th Cir. 1998), *abrogated on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000), and other judges within this district, *see Burgess v. Bell*, No. 07-CV-11367, 2010 WL 4790910, *8-10 (E.D. Mich. Nov. 17, 2010); *Wang v. Sampson*, No. 08-CV-10832, 2010 WL 4340536, *2 (E.D. Mich. Oct. 27, 2010) (adopting magistrate judge's report); *Fike v. Trombley*, No. 07-CV-10868, 2010 WL 1286412, *3 (E.D. Mich. March 31, 2010); *Al-Khalil v. Davis*, No. 08-CV-10987, 2009 WL 2905950, *3 (E.D. Mich. Sept. 8, 2009) (adopting magistrate judge's report); *Lutze v. Sherry*, No. 07-CV-11227, 2008 WL 2397640, *5 (E.D. Mich. June 11, 2008); *Ish v. Jones*, No. 05-CV-72972, 2008 WL 2781019, *3 (May 21, 2008).  The Court agrees with the reasoning of those decisions and finds no reason to rule otherwise.  This claim lacks merit and does not warrant relief.[4]

## V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

---

[4]Again, given this determination, the Court need not address the exhaustion issue.

Before Petitioner may appeal the Court's decision, a certificate of appealability ("COA") must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court denies relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). A court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the habeas claims. *Id*. at 336-37.

When a federal court denies relief on procedural grounds without addressing the merits of a claim, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his non-disclosure of evidence, prosecutorial misconduct, evidentiary ruling, new trial/insufficient evidence, and separation of powers claims and that reasonable jurists could not debate the Court's procedural ruling on his prosecutorial misconduct claims. Accordingly, the Court **DENIES** a certificate of appealability as to those claims. However, the Court concludes that Petitioner has made a substantial showing of the

33

denial of a constitutional right as to his ineffective assistance of trial counsel claims.  According

the Court **GRANTS** a certificate of appealability as to those claims.

     **IT IS ORDERED.**

                            s/Marianne O. Battani

                            MARIANNE O. BATTANI

                            UNITED STATES DISTRICT JUDGE

Dated:  August 2, 2011

CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of this Order was served upon the

Petitioner, Antoine Teel via ordinary U.S. Mail and Counsel for the Respondent, electronically.

                            s/Bernadette M. Thebolt

                            Case Manager